IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BEN SALAZAR, | ) | |
| | ) | 8:06cv415 |
| Plaintiff, | ) | |
| | ) | MEMORANDUM AND ORDER |
| vs. | ) | |
| | ) | |
| NCAA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on filing nos. 6, 14, and 22, the Motions to Dismiss filed by the defendants, the National Collegiate Athletic Association ("NCAA"), the College World Series of Omaha, Inc. ("CWS"), and NCAA Credentials Director David Worlock.  In his complaint, as amended (filing nos. 1 and 20), the pro se plaintiff, Ben Salazar, bases jurisdiction in this court on Title II of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a *et seq.* (remedy for discrimination in public accommodations), and 42 U.S.C. § 1983 (remedy for civil rights violations by state actors).   In addition to deprivations of his civil rights, Mr. Salazar alleges causes of action in tort under Nebraska law.  All claims arose from an altercation during a CWS baseball game on June 16, 2005.

The plaintiff alleges that he is of Mexican-American ethnicity and that he publishes Nuestro Mundo, a bilingual newspaper in Omaha, Nebraska.  Because of the newspaper, the plaintiff and his staff usually receive CWS press credentials, as he did for the 2005 CWS baseball tournament in Omaha.  The NCAA and CWS jointly sponsor the annual CWS tournament.   On June 16, 2005, the plaintiff and a colleague, both bearing Nuestro Mundo press credentials, were admitted to the CWS game through the press box. In accordance with past practice approved by the NCAA, they sat in open seats, as Nuestro

1

Mundo does not have assigned seating.  The understanding between Nuestro Mundo and the NCAA required that if someone arrived demonstrating assignment to the seats occupied by Nuestro Mundo press members, the Nuestro Mundo press would relocate.

Unfortunately, an exceedingly unpleasant argument over seating erupted on June 16, 2005. Persons not involved in this litigation rudely berated the plaintiff and his colleague.  Then Worlock, in charge of press credentials for the NCAA, appeared, and matters further deteriorated.  The parties exchanged words, and Worlock revoked the plaintiff's credentials.  Worlock even grabbed the credentials draped on a cord around the plaintiff's neck and yanked the cord off of the plaintiff's person.  Then Worlock summarily evicted the plaintiff from the stadium.[1]

The plaintiff alleges violations of his First Amendment right to freedom of expression and his right to free access to and use of public accommodations.  He seeks to vindicate those rights pursuant to 42 U.S.C. § 1983 and 42 U.S.C. §§ 2000a *et seq.*, the Public Accommodations Title of the 1964 Civil Rights Act.   The plaintiff requests damages only.

## 42 U.S.C. § 2000a - Public Accommodations

42 U.S.C. § 2000a, entitled "Prohibition against discrimination or segregation in places of public accommodation," states in pertinent part: "(a) Equal access - All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin."  However, 42 U.S.C. § 2000a-6 provides no damages remedy for violation

---

[1]The plaintiff describes himself and his colleague as well educated, approximately sixty-year-old Vietnam war veterans, of Hispanic ethnicity.

2

of § 2000a, and the plaintiff may not obtain damages under 42 U.S.C. § 1983 for the denial of § 2000a rights.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 & n.5 (1970), in which the United States Supreme Court explained that Title II of the 1964 Civil Rights Act, the Public Accommodations provision, provides for enforcement exclusively by injunction, and "[m]oreover, the legislative history makes quite plain that Congress did not intend that violations of the Public Accommodations Title be enforced through the damages provisions of [42 U.S.C.] § 1983."

## 42 U.S.C. § 1983 - Action Under Color of State Law

42 U.S.C. § 1983 provides a remedy for certain deprivations of a claimant's civil rights.  To state a claim for relief in an action under 42 U.S.C. § 1983, the plaintiff must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under "color of state law," i.e., by a "state actor."

"The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment:  is the alleged infringement of federal rights 'fairly attributable to the State?'"  Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982); Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).  Thus, an allegation that a private individual has deprived the plaintiff of a constitutional right fails to state a cause of action under 42 U.S.C. § 1983.   See, e.g., Pino v. Higgs, 75 F.3d 1461, 1464-67 (10th Cir. 1996):  "To bring a claim under § 1983, a plaintiff must initially establish that a defendant acted 'under color of any statute, ordinance, regulation, custom, or usage, of any State' to deprive the plaintiff of 'any rights, privileges, or immunities secured by the Constitution and laws' of the United States.  42 U.S.C. § 1983."

3

Therefore, if the actions of a defendant were "not state action, our inquiry ends." Rendell-Baker v. Kohn, 457 U.S. at 838.

In this case, even assuming the truth of the factual allegations in the complaint, as amended, the plaintiff has not alleged a factual basis for state action.  First, the United States Supreme Court has previously determined that the NCAA does not act under color of state law for purposes of § 1983.  See NCAA v. Tarkanian, 488 U.S. 179 (1988).  As explained in Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, 531 U.S. 288, 297-98 (2001), *citing* NCAA v. Tarkanian, 488 U.S. at 193, because the NCAA's policies are shaped by "several hundred member institutions" located in different jurisdictions "most of them having no connection with" any particular state, "it was difficult to see the NCAA, not as a collective membership, but as [a] surrogate for ... one State." Thus, the organization's connection with any one state was "too insubstantial to ground a state-action claim."

In this case, the plaintiff has failed to explain why the same rationale would not apply to the CWS.  In addition, as the NCAA is not a state actor, the plaintiff has asserted no reason why the NCAA's employee, Worlock, is anything but a private individual.  Thus, when Worlock shoved the plaintiff and evicted him from the CWS game on June 16, 2005, Worlock did not act under color of state law.  His actions as described by the plaintiff constituted acts of petty meanness, unprofessional conduct, and possibly a battery under state law, but they were the acts of a private individual.

Therefore, the plaintiff has not stated a claim on which relief may be granted under 42 U.S.C. § 1983 or Title II of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a *et seq.*  As a result of the resolution of the foregoing matters, the plaintiff's claims against the

defendants will be dismissed.  The claims arising under federal law will be dismissed with prejudice.  In addition, the court has discretion under 28 U.S.C. § 1367(c)(3) to decline to exercise supplemental jurisdiction over the claims arising under state law when the court has dismissed the claim(s) over which this court has original jurisdiction, i.e., the federal claims.  28 U.S.C. § 1367(d) tolled the limitations period for the state law claims against the defendants while this federal case was pending.  In the event the plaintiff may wish to assert his claims arising under state law in a state court, any such state law claims in this case will be dismissed without prejudice.

THEREFORE, IT IS ORDERED:

1.     That filing nos. 6, 14, and 22, the defendants' Motions to Dismiss, are granted insofar as the motions are consistent with this Memorandum and Order; and

2.     That judgment will be entered accordingly.

DATED this 5th day of March, 2007.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief District Judge

5